United States District Court
Southern District of Texas
**ENTERED**
January 26, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WANDA ABDULLAH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1411 |
| | § | |
| WILBUR ROSS, SECRETARY OF | § | |
| UNITED STATES DEPARTMENT OF | § | |
| COMMERCE,[1] | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[2] is Defendant's Motion for Summary Judgment (Doc. 38). The court has considered the motion, the response, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

## I. Case Background

Plaintiff filed this action alleging discrimination, retaliation,[3] and hostile work environment based on her race and

---

[1]    Penny S. Pritzker was the Secretary of the United States Department of Commerce at the time that Plaintiff filed this case but no longer holds that position. Wilbur Ross is the current Secretary of the Department of Commerce and, as such, is automatically substituted as Defendant. See Fed. R. Civ. P. 25(d).

[2]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 8, Ord. Dated May 25, 2016.

[3]    In her amended complaint, Plaintiff alleges that the retaliation occurred both for EEO and whistleblowing activities. See Doc. 13, Pl.'s Am. Compl. pp. 8-9.

age in violation of Title VII Civil Rights Act of 1964[4] ("Title VII") and the Age Discrimination in Employment Act[5] ("ADEA"),[6] after she resigned from her position with the United States Census Bureau at the Department of Commerce ("Census Bureau").[7]

Plaintiff began working as a field representative for the Dallas regional office[8] of the Census Bureau in 2008.[9]  That same year, she reported fraud committed by other field representatives to her supervisor.[10]  Plaintiff testified that after she reported the fraud, she was treated differently.[11]  In October 2012, the

---

[4]     42 U.S.C. §§ 2000e-2000e-17.

[5]     29 U.S.C. §§ 621-634.

[6]     Plaintiff's response to the pending motion contains numerous misstatements about her claims and the facts in this case.  For example, the response states that Plaintiff's claims are brought under the Family Medical Leave Act and Americans with Disabilities Act, when these allegations were never raised during the administrative process or Plaintiff's amended complaint.  Doc. 44, Pl.'s Resp. p. 11.  Also, there has been no allegation in this case that Plaintiff was disabled or had sought protection under the Americans with Disabilities Act.

Additionally, Plaintiff misrepresents the timeline in this case, stating that she experienced adverse actions after filing her complaint with the EEO; however, she filed the complaint long after she resigned, and there were no allegations or evidence of misconduct by Defendant after she filed the complaint.  Plaintiff also fails to cite to the record evidence to support her statement of the facts.  The court may only rely on competent summary judgment evidence, not arguments from counsel in considering this motion.

[7]     See Doc. 13, Pl.'s Am. Compl.

[8]     Plaintiff was assigned to the Dallas office, and later the Denver regional office, but always worked from her home in Houston.  See Doc. 44-15, Ex. O to Pl.'s Resp., Pl.'s Dep. p. 21, 29.

[9]     See id. pp. 6-7.

[10]    See id. pp. 10-12.

[11]    See id. pp. 12-20.

2

offices of the Census Bureau were consolidated, and Plaintiff was supervised by the Denver regional office.[12]

On September 15, 2014, Plaintiff received a written warning from Don Keener, ("Keener") the survey supervisor-field, for "failure to follow directions . . . in a timely manner."[13]  Keener admonished Plaintiff to work exclusively on her own cases and to stop focusing on the allegedly inadequate work product of other field representatives.[14]  He also reminded Plaintiff that she had been warned about this behavior by her field supervisor, Paula Arsenault.[15]

Plaintiff filed a formal grievance with human resources on October 1, 2014,[16] requesting "[r]elief from a flawed rating system, hostile work environment, inequities, lack of accountability and unreasonable work practices."[17]  Plaintiff complained about Keener's written warning, stating that she thought he was retaliating

---

[12]    See id. pp. 28-29.

[13]    Doc. 44-2, Ex. B to Pl.'s Resp., Written Warning Letter Dated Sept. 15, 2014, p. 1.

[14]    See id.

[15]    See id.

[16]    In her surreply, Plaintiff claims for the first time that she called her employer's EEO office on this date, and also claims that she attached phone records evidencing as such.  However, these phone records were not attached to the electronic or paper copy received by the court.

[17]    See Doc. 44-3, Ex. C to Pl.'s Resp., Formal Grievance Dated Oct. 1, 2014 pp. 1-4.  Notably, this administrative complaint process is separate from the EEO complaint process.

against her for sharing her concerns about her co-workers.[18] Plaintiff also raised objections to her 2013 end-of-year performance evaluation and her mid-year 2014 performance evaluation.[19]

On February 4, 2015, Plaintiff sought three days paid leave based on work-related stress, supporting that request with a letter from her psychologist.[20]  On February 15, 2015, Plaintiff resigned from her position, citing health-related concerns.[21]

After her resignation, on March 27, 2015, Plaintiff received a partial determination on the administrative grievance concerning her 2013 performance review.[22]  One critical sub-category, was raised to "Level 3" which raised Plaintiff's overall composite score to "Level 3."[23]  Her supervisor stated, "According to my calculations, you are now a Level 3 in Production and Cost.  Since your were already a Level 3 in the other Critical Elements . . . , this brings all four of your Critical element ratings to a Level 3 and your Overall Rating to a Level 3."  The corrected rating was

---

[18]    See id. p. 1.

[19]    See id.

[20]    See Doc. 44-18, Ex. R to Pl.'s Resp., Letter from Pl.'s Psychologist Dated Feb. 4, 2015 p. 1.

[21]    See Doc. 38-1, Ex. 1 to Def.'s Mot. for Summ. J., Pl.'s Resignation Letter Dated Feb. 15, 2015 p. 1.

[22]    See Doc. 44-4, Ex. D to Pl.'s Resp., Letter from Census Bureau Dated Mar. 27, 2015 p. 1.  Her complaints concerning the 2014 mid-year evaluation were not included in this letter.

[23]    See id.

sent with this letter and Plaintiff was asked to sign it and send it back to the Denver regional office.[24]

Plaintiff's formal grievance concerning the final 2013 and mid-term 2014 performance evaluations was reviewed by Rich Gerdes, ("Gerdes") a program coordinator for the Census Bureau.[25]  In the letter dated May 15, 2014, Gerdes stated that because there was "little to no documentation that gave examples of actual cases that should be adjusted," and because he did not have enough detail, he was not able to adjust Plaintiff's performance rating to a Level 3 for "CPS Production" on her final 2013-2014 evaluation as proposed by the lower-level reviewer.[26]  Gerdes stated that if Plaintiff was able to provide more information, he would reconsider his decision if the new data supported such an adjustment.[27]

On June 27, 2015, Plaintiff sent Gerdes supporting information in support of her claim to a Level 3 performance rating for CPS Production and CEQ Response.[28]  On July 20, 2015, Gerdes responded in detail to Plaintiff's evidence, made some adjustments to Plaintiff's cases based on the data she provided, raising the CPS

---

[24]    See id.

[25]    See Doc. 44-5, Ex. E to Pl.'s Resp., Letter Dated May 15, 2015 pp. 1-3.

[26]    Id. p. 1.

[27]    See id. p. 2.

[28]    See Doc. 44-6, Ex. F to Pl.'s Resp., Email from Pl. to Gerdes Dated June 27, 2015 pp. 1-12.

Response category to a Level 3 but maintaining her CEQ Response and CED Response ratings as Level 2s.[29]  Her final overall rating was a Level 3.[30]

Plaintiff contacted the EEO Office within the Department of Commerce on July 31, 2015, and met with EEO Counselor Ernesto Santos-DeJesus ("Santos-DeJesus") on August 3, 2015.[31]  Santos-DeJesus reported that Plaintiff's initial contact with the EEO Office took place on July 31, 2015, and that the last date of harm took place on July 15, 2015.[32]  In the counselor's report, Santos-DeJesus recorded that Plaintiff claimed a hostile work environment, retaliation and race and age discrimination as the bases for the denial of within-grade pay increases from 2013 through February 15, 2015, and her resignation on February 15, 2015.[33]  In response, the agency explained that the Human Resources Branch was working with Plaintiff's supervisors to correct her past evaluations and that it would ensure that Plaintiff received the correct within-grade increases as determined in the administrative grievance process.

---

[29]    See Doc. 44-7, Ex. G to Pl.'s Resp., Letter Dated July 20, 2015 pp. 1-5.

[30]    See id. p. 5.

[31]    See Doc. 44-9, Ex. I to Pl.'s Resp., EEO Counselor's Report; Doc. 44-12, Ex. L to Pl.'s Resp. EEO Letter Dated Aug. 24, 2015 pp. 1-2.  In her deposition, Plaintiff testified that she also contacted the EEO on July 15, 2015. See Doc. 44-14, Ex. O to Pl.'s R Resp., Pl.'s Dep. p. 87.

[32]    See Doc. 44-9, Ex. I to Pl.'s Resp., EEO Counselor's Report p. 1.

[33]    See id. p. 2.  As damages, Plaintiff sought front pay for five years, $300,000 in damages for her physical and emotional distress, and attorney's fees.

The agency offered to reinstate Plaintiff's employment but refused to pay the monetary damages for mental anguish and front pay demanded by Plaintiff.[34]  Plaintiff refused to accept reemployment.[35]  Santos-DeJesus noted in his report that Plaintiff had no evidence to rebut her supervisors actions or to support her claim that discrimination was the true motivation for the lower ratings.[36]

On August 24, 2015, Santos-DeJesus sent Plaintiff a letter telling her that she had fifteen calendar days to file a formal complaint.[37]  Plaintiff filed a formal complaint with the Department of Commerce's Office of Civil Rights on September 11, 2015, and raised claims of a hostile work environment, denial of within-grade increases in 2013 and 2014, the issuance of a September 15, 2014 written warning and management's refusal to hear Plaintiff's complaints about its flawed ratings system.[38]

This complaint was dismissed on September 30, 2015, for Plaintiff's failure to comply with the regulatory requirement of contacting an EEO counselor within forty-five days of the harm, and for failure to state a claim.[39]  Plaintiff appealed this decision,

---

[34]   See id. p. 3.

[35]   Id.

[36]   See id.

[37]   See Doc. 44-12, Ex. L to Pl.'s Resp., Not. of Right to File pp. 1-2.

[38]   See Doc. 44-13, Ex. M to Pl.'s Resp., Pl.'s EEOC Compl. pp. 5.

[39]   See Doc. 44-14, Ex. N to Pl.'s Resp., Final Agency Dec.

to the Equal Employment Opportunity Commission ("EEOC").[40]  The EEOC
characterized Plaintiff's claims as:

> discrimination on the bases of race, age, and reprisal
> (whistleblower activity) when:
>
> 1.  [she] was denied a within grade increase in 2013 and
> 2014;
>
> 2.  she was treated differently with respect to case
> assignments;
>
> 3.  due to her informal and formal grievance, her rating
> was changed from "Unsatisfactory" to "Level 3." However,
> other matters were excluded from consideration in the
> grievance procedure, including being denied a within
> grade increase in 2013 and 2014, by the Chief, Human
> Resources Office; and
>
> 4.  she was forced to resign effective February 15,
> 2015.[41]

The EEOC dismissed her complaint on the basis that her claims were
not timely, as the "alleged discriminatory events occurred in 2013,
2014, and on February 15, 2015," explaining that filing internal
grievances did not toll the limitations period for contacting an
EEO counselor.[42]  As to the third claim relating to the filing of
her grievance, the EEOC stated that it "has held that an employee
cannot use the EEO complaint process to lodge a collateral attack
on another proceeding" and that the "proper forum" to raise these
issues was during the grievance process.[43]

---

[40]     See Doc. 3, EEOC Appeal pp. 1-6.

[41]     Id. pp. 1-2.

[42]     Id. p. 2.

[43]     Id.

Plaintiff filed her complaint in this court on May 17, 2016, and amended her complaint on July 21, 2016.[44]  Defendant moved for summary judgment on all of Plaintiff's claims on October 10, 2017, on the basis that Plaintiff failed to exhaust her administrative remedies.[45]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits

---

[44]    See Doc. 1, Pl.'s Compl.; Doc. 13, Pl.'s Am. Compl.

[45]    See Doc. 44, Def.'s Mot. For Summ. J.

that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in her pleading but must respond with evidence showing a genuine factual dispute.  <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.  Applicable Law

Federal employees are protected from discriminatory personnel actions under Title VII based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate . . . because of such individual's age."  29 U.S.C. § 623(a)(1).

In order to gain the right to file a Title VII action against one's employer for a decision which meets the above requirements, the aggrieved employee "must negotiate and exhaust the complex administrative regime that governs Title VII public employment cases."  <u>Butler v. West</u>, 164 F.3d 634, 638 (D.C. Cir. 1999); <u>see also</u> 42 U.S.C. § 2000e-16(c).

Regulations promulgated by the EEOC require that a federal employee identify the alleged discriminatory practice to an EEO Counselor within forty-five days before filing a complaint with the EEOC.  29 C.F.R. § 1614.105(a)(1).  The EEO Counselor attempts to resolve the problem informally at the agency level.  29 C.F.R. §

10

1614.105(a).  If no informal resolution is possible within thirty days, the EEO Counselor notifies the complainant of the right to file, within fifteen days, a formal administrative complaint.  29 C.F.R. § 1614.105(d).  Once a complainant files a formal complaint with the agency, an investigation follows.  29 C.F.R. § 1614.108(a).  Following an agency's final decision, the complainant may appeal to the EEOC or, in the alternative, may proceed directly to federal court.  29 C.F.R. §§ 1614.401(a), 1614.407(a).  If the appeal is made to the EEOC, as here, a complainant may file a court suit against the federal government within ninety days of the EEOC's final action.  29 C.F.R. § 1614.407(c).  Failure to follow these regulations is considered a failure to exhaust administrative remedies.  See, e.g., Fitzgerald v. Secretary, United States Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997).

The Fifth Circuit has "conflicting authority on the question of whether exhaustion of EEOC administrative remedies is jurisdictional in a Title VII case." Baker v. McHugh, 672 F. App'x 357, 360 (5th Cir. 2016)(unpublished)(citing Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990)("It is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") and Young v. City of Houston, 906 F.2d 177, 180 (5th Cir. 1990)("A failure of the EEOC prerequisite does not rob a court of jurisdiction."); see also Pacheco v. Mineta, 448 F.3d 783, 788 n.7 ("There is a disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to

11

waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). As this court has pointed out, this disagreement may stem from the differences between suing private and federal government employers. Jackson v. Shinseki, Civil Action No. H-10-0170, 2010 WL 2303307, at *4 n.2 (S.D. Tex. June 7, 2010)(unpublished).

However, relevant to this case, failure to contact an EEO counselor in a timely manner is not considered a jurisdictional issue, instead merely a pre-suit requirement, and is thus subject to waiver, estoppel, and equitable tolling. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990)("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."); Baker, 672 F. App'x at 361 ("this court has specifically held that the requirement of timely contacting an EEO counselor is non-jurisdictional"); Henderson v. United States Veterans Admin., 790 F.2d 436, 440 (5th Cir. 1986)("The timely notification to the appropriate administrative authority of a complaint of discrimination is a precondition to suit and may bar the claim. Lack of timely notification, however, does not deprive the court of subject matter jurisdiction."); Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992)("Failure to notify the EEO counselor in a timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling.").

## III. Analysis

Defendant moves for summary judgment on the basis that Plaintiff failed to seek Equal Employment Opportunity ("EEO") counseling in a timely fashion.  In response, Plaintiff asserts that her claims are timely, or, alternatively, that the limitations period should be equitably tolled.

## A.  <u>Forty-Five Day Limitations Period</u>

Defendant argues that Plaintiff failed to seek EEO counseling within the forty-five day limitations period.  Plaintiff challenges this, alternatively arguing that she initiated contact with the EEO earlier than July 2015, that her last date of harm took place in July 2015, and that the continuing violations doctrine makes her claims timely.

### 1.  October 1, 2014 Contact

In her surreply, Plaintiff states that she has new evidence, a phone record, showing that she actually contacted her employer's EEO Office in October 2014. Plaintiff fails to attach this record to the surreply.  Even if she had a phone record that showed she called the EEO Office on that date, this does not raise a fact issue that she attempted to invoke the informal grievance procedure required by the regulation.  The regulation contemplates the initiation of an informal resolution process, not simply a phone call for information.  Whatever the call concerned, it is undisputed that it did not commence the required informal grievance process.  Therefore, Plaintiff has not raised a fact issue that she

13

attempted to file an informal complaint of discrimination in October 2014.

## 2.  July 31, 2015 Contact

Plaintiff also argues that because her EEO counselor noted on his report that the date of harm was July 15, 2015, she must have initiated contact with him in a timely fashion.  Defendant argues that it is unclear from the facts what discriminatory action could have taken place on that date, making the placement of the date on the report meaningless.

Both Title VII and the ADEA require that, to prove a claim, a plaintiff must demonstrate that there was an adverse employment action, which means "an employment decision that affects the terms and conditions of employment." Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014); Cheatham v. Allstate Ins. Co., 465 F.3d 578, 582 n.4 (5th Cir. 2006).  The Fifth Circuit has elaborated that adverse employment actions include "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating," and do not include actions that "do[] not affect job duties, compensation, or benefits." Thompson, 764 F.3d at 503.  The Fifth Circuit has also expanded the definition of adverse employment actions to include transfers, reassignments, or loss of job responsibilities that are "equivalent" to demotions. Id. at 503-04.

Plaintiff's evidence shows that her EEO counselor noted her

14

last date of harm as July 15, 2015.  However, in his report, Santos-Jesus found that Plaintiff had no evidence of discrimination.  The only other event which took place within the forty-five days preceding Plaintiff's initial contact on July 31, 2015, was a letter granting her a partially favorable decision on her administrative grievance.  This clearly does not qualify as an adverse employment action; rather, as the EEOC pointed out, Plaintiff appears to allege employment discrimination in an attempt to collaterally appeal an unfavorable decision in the administrative grievance process, an event that does not meet the definition of an adverse employment action.[46]  Therefore, there are no adverse employment actions within the forty-five-day time frame which raise a genuine issue of material fact on Plaintiff's claims under Title VII or the ADEA.  Plaintiff's contact with the EEO Office was untimely.

### 3.  Continuing Violation Doctrine

Plaintiff cites the continuing violation doctrine to argue that earlier harm that occurred is actionable in this case.

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-18 (2002), the Supreme Court held that the continuing violation doctrine does not apply to discrete acts of discrimination or

---

[46]      The court notes that Plaintiff could have contacted the EEO Office within forty-five days of the evaluation and the denial of a within-grade increase and made a claim of race and age discrimination.  She opted not to directly pursue this avenue, choosing instead to administratively challenge the evaluation.

retaliation, but can apply in hostile environment claims to allow a plaintiff to recover for acts that occurred outside the limitations period.  A court can look to "the entire scope of the hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory window." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009)(quoting Morgan, 536 U.S. at 105.

Based on this precedent, Plaintiff's allegations, including her resignation and her supervisor's decision regarding her grievance, concern discrete acts that cannot support the application of the continuing violation doctrine.  The court then considers whether the continuing violation doctrine would support a claim for hostile environment harassment.

Plaintiff contends that events that occurred after she resigned from her position support a finding of a continuing hostile environment by the Census Bureau.  However, courts have found that events that occur after an employee leaves her position cannot be used to support a claim for a hostile work environment. See, e.g., Reid v. Aransas Cty., 805 F. Supp.2d 322, 335 (S.D. Tex. 2011)("Plaintiff cannot use events that happened after his termination to support his hostile work environment claim."); E.E.O.C. v. Noble (U.S.) Inc., No. 04-CV-2419, 2006 WL 373487, at *3 (W.D. La. Feb. 16, 2006)(unpublished)("[C]onduct is only actionable under a hostile work environment theory if it altered

the terms or conditions of employment.  Because [the plaintiff] had been terminated by the time the [action] took place, there were no terms or conditions of employment to alter."); <u>Andrews v. Atl. Marine, Inc.</u>, Civ. A. 03-280-CG-L, 2005 WL 2665345, at *3 (S.D. Ala. Oct. 18, 2005)("[A]n event that took place over a year after [the plaintiff's] employment was terminated could not be considered part of [the plaintiff's] hostile work environment claim.  [The plaintiff's] work environment with defendants ended upon his termination.").

The court finds these cases persuasive.  Plaintiff cannot say that she was subject to a hostile work environment when she was no longer employed by the Census Bureau.  Thus, the continuing violation doctrine does not apply in this case to save Plaintiff's claims.

## B.  **Equitable Tolling**

Alternatively, Plaintiff seeks equitable relief,[47] contending that the forty-five period should be equitably tolled due to her mental incapacity, citing evidence from her psychologist that she was experiencing psychological distress before her resignation. Defendant argues Plaintiff has not met her burden to show that the deadline should be equitably tolled.

Equitable tolling, estoppel, and waiver can be applied to the

---

[47]    In her response, Plaintiff also mentions waiver and estoppel, but does not provide the court with any legal or factual support for the application of these theories.

time limitations set forth in the regulations.   29 C.F.R. §

1614.604.   However, the Supreme Court has cautioned that equitable

tolling should only be utilized "sparingly."   <u>Irwin v. Dep't of</u>

<u>Veterans Affairs</u>, 498 U.S. 89, 96 (1990).   The Court has explained:

> We have allowed equitable tolling in situations where the
> claimant has actively pursued his judicial remedies by
> filing a defective pleading during the statutory period,
> or where the complainant has been induced or tricked by
> his adversary's misconduct into allowing the filing
> deadline to pass. We have generally been much less
> forgiving in receiving late filings where the claimant
> failed to exercise due diligence in preserving his legal
> rights.

<u>Id.</u>   "Equitable tolling an extraordinary remedy appropriate only in

a narrow class of fact situations."   <u>Kerver v. Exxon Prod. Research</u>

<u>Co.</u>, No. 85-1525, 1986 WL 8872, at *2 (S.D. Tex. May 15, 1986),

<u>aff'd</u>, 810 F.2d 196 (5th Cir. 1987).

For federal employees, 29 C.F.R. § 1614.105, states that the

forty-five day time limit shall be extended in cases where:

> the individual shows that he or she was not notified of
> the time limits and was not otherwise aware of them, that
> he or she did not know and reasonably should not have
> been known that the discriminatory matter or personnel
> action occurred, that despite due diligence he or she was
> prevented by circumstances beyond his or her control from
> contacting the counselor within the time limits, or for
> other reasons considered sufficient by the agency or the
> Commission.

29 C.F.R. § 1614.105(a)(2).   The burden is on the plaintiff to

prove that equitable tolling should be applied.   <u>Wilson v. Sec'y,</u>

<u>Dep't of Veterans Affairs</u>, 65 F.3d 402, 404 (5th Cir. 1995).

The Fifth Circuit has not decided the question of whether

mental incapacity can toll the statute of limitations in employment discrimination cases. <u>Hood v. Sears Roebuck & Co.</u>, 168 F.3d 231, 232 (5th Cir. 1999).  In <u>Hood</u>, the Fifth Circuit chose not to answer this question, instead finding that equitable tolling did not apply to the facts of that particular case, as Plaintiff had retained counsel and could have pursued her legal rights during the forty-five day time period.  <u>Id.</u> at 233.  However, the court acknowledged that other circuits have adopted "the traditional rule that mental illness tolls a statute of limitations . . . if the illness . . . prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them."  <u>Id.</u> at 232 (quoting <u>Miller v. Runyon</u>, 77 F.3d 189, 191 (7th Cir. 1996) and citing <u>Speiser v. U.S. Dep't of Health and Human Servs.</u>, 670 F. Supp. 380, 384 (D.D.C. 1986), <u>aff'd</u>, 818 F.2d 95 (D.C. Cir. 1987)).  The court explained that this rule had been used by some courts to decide whether to toll a statute of limitations in Title VII cases. <u>Id.</u> (citing <u>Pulitzer v. Middleberg</u>, Civ. A. No. 95-4004, 1996 WL 469689, at *5 (E.D. La. 1996) and <u>Moody v. Bayliner Marine Corp.</u>, 664 F. Supp. 232, 235 (E.D.N.C. 1987)).  However, "[c]ourts that have allowed equitable tolling based on mental illness have done so only in exceptional circumstances, such as where the complainant is institutionalized or adjudged mentally incompetent."  <u>Videl v. Chertoff</u>, 293 F. App'x 325, 329 (5th Cir. 2008)(unpublished)(citing <u>Lyons v. Potter</u>, 521 F.3d 981, 983 (8th Cir. 2008)); <u>see also Eber</u>

19

v. Harris Cty. Hosp. Dist., 130 F. Supp.2d 847, 865 (S.D. Tex. 2001)("[t]he few courts which have recognized an exception for mental incapacity have limited the application of this equitable doctrine to exceptional circumstances.")(quoting Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1268 (10th Cir. 1996)).

Eber explained that in cases where courts have considered this issue, they have looked to factors such as: "(a) the plaintiff's representation by counsel; (b) the plaintiff's capacity to work; (c) the plaintiff's ability to execute legal documents; (d) the degree to which the plaintiff was able to interact with others; (e) medical evidence regarding any mental, emotional or psychological problem; and (f) an adjudication of incompetency or a hospitalization for mental incapacity." 130 F. Supp.2d at 866 (citations and internal quotations omitted). Courts that have allowed equitable tolling require that the plaintiff show that her mental incapacity was so pervasive that she could not file her charge. Id. In Eber, the court tolled the statute of limitations period while the plaintiff was comatose and hospitalized. Id. at 867. However, the tolling was only co-extensive with the dates of hospitalization, not the days preceding or following release from the hospital. Id.

Plaintiff's evidence of mental incapacity in this case includes two notes from her psychologist, one from February 4,

2015, and one from September 1, 2015.[48]   In the letter dated February 4, 2015, Victoria Sloan, Ph.D., ("Dr. Sloan") noted that she had seen Plaintiff that day regarding work-related stress.[49] Dr. Sloan opined that Plaintiff take three days off from work, from February 4, 2015, to February 6, 2015.[50]  On September 1, 2015, Dr. Sloan wrote to the EEOC explaining that she had recommended that Plaintiff resign from her position because of "severe psychological and emotional harassment in the workplace."[51]

While these letters support Plaintiff's position that she was emotionally distressed at the time of her resignation, they do not explain her inability to contact her EEO counselor within forty-five days of the resignation.  In fact, there is no evidence in the record about Plaintiff's mental state post-resignation.

As equitable tolling is warranted in only the most exceptional cases, and Plaintiff has no evidence that her mental state warranted tolling of the forty-five day limitations period, she has not met her burden, and the limitations period may not be equitably tolled.

## IV.  Conclusion

---

[48]     See Doc. 44-18, Ex. R to Pl.'s Resp., Letter from Pl.'s Psychologist Dated Feb. 4, 2015; Doc. 44-18, Ex. R to Pl.'s Resp, Letter from Pl.'s Psychologist Dated Sept. 1, 2015.

[49]     See Doc. 44-18, Ex. R to Pl.'s Resp., Letter from Pl.'s Psychologist Dated Feb. 4, 2015 p. 1.

[50]     See id.

[51]     Doc. 44-18, Ex. R to Pl.'s Resp, Letter from Pl.'s Psychologist Dated Sept. 1, 2015 p. 1.

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of January, 2018.

_____
U.S. MAGISTRATE JUDGE