UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WANDA ABDULLAH, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-16-1411 |
| § | |
| WILBUR ROSS, *Secretary* § | |
| U.S. Department of Commerce, § | |
| § | |
| *Defendant*. § | |

## ORDER

Pending before the court is a memorandum and recommendation ("M&R") in which the Magistrate Judge recommends that the court grant defendant Wilbur Ross's motion for summary judgment (Dkt. 38). Dkt. 50. Plaintiff Wanda Abdullah has filed objections to the M&R. Dkt. 51. After considering the M&R, objections, relevant documents in the record, and the applicable law, the court is of the opinion that the objections (Dkt. 51) should be OVERRULED and the M&R (Dkt. 50) should be ADOPTED IN FULL.

### I. BACKGROUND

This is an employment discrimination and whistleblower retaliation case. Dkt. 50. Abdullah worked as a field representative for the U.S. Census Bureau from on or about January 2008 until February 2015. Dkt. 13. She was assigned to the Dallas Regional Office through October 2012 and then to the Denver Regional Office through February 2015. *Id.* However, she actually worked in Houston, Texas. *Id.* She contends that she was retaliated against because she reported fraud to her employer. *Id.* She also asserts that the supervisors and staff at the Denver Regional Office discriminated against her because of her race and age by not allowing her to keep certain cases and denying her within grade increases. *Id.* Additionally, she claims that she was a victim of a hostile

work environment. *Id.* She resigned in February 2015, and she claims that she was forced to resign because her job was causing her so much stress that she could no longer do the job. *Id.* Her claims against her employer include (1) retaliation for whistleblowing; (2) age and race discrimination; and (3) retaliation and hostile work environment relating to her age and race. *Id.*

Ross moved for summary judgment, arguing that the court is not required to reach the merits of Abdullah's claims because she did not timely seek Equal Employment Opportunity ("EEO") counseling, which is a requirement for federal employees who wish to file claims with the EEOC and eventually sue their employers. Dkt. 38. Abdullah contends that she timely sought EEO counseling and, alternatively, that the court should consider the continuing violations doctrine or equitable tolling. Dkt. 44. The Magistrate Judge determined that Abdullah failed to seek EEO counseling within the forty-five day limitations period, as required for federal employees who allege discrimination. Dkt. 50. The Magistrate Judge also held that the continuing violation doctrine does not apply and that there is insufficient evidence to support equitable tolling. Dkt. 50. The Magistrate Judge thus recommends that the court grant Ross's motion for summary judgment. *Id.*

Abdullah filed objections to the M&R. Dkt. 51. She contends that the Magistrate Judge erred in finding that Abdullah did not initiate EEO counseling within forty-five days of the incident giving rise to discrimination because her harm was of a continuing nature, taking place over a number of key dates and a series of key events. *Id.* at 5. Abdullah argues that, as a matter of law, "any one of the dates and every one of the events . . . must be considered to determine timeliness." *Id.* at 5–6. She asserts that a letter she received in July 2015 is one example of an event that gave rise to discrimination because it represents an adverse employment action. *Id.* at 6. This letter, in memorandum form, is dated July 20, 2015; it is a decision on a formal administrative grievance related to which cases Abdullah worked and her overall rating. Dkt. 44-7. The author of the

memorandum thanks Abdullah for "bringing this to [the agency's] attention" and grants partial relief. *Id.*

Abdullah also contends that she made her initial contact with the EEO counselor in July 2015, citing a counselor's report dated August 16, 2015, in which the counselor notes Abdullah contacted him on July 31, 2015. *Id.*; Dkt. 44-9. The report contains a timeline stating that the "date of harm" was July 15, 2015. *Id.* Abdullah contends that this timeline demonstrates that she sought EEO counseling within forty-five days of the incident or event giving rise to discrimination. Dkt. 44-9; Dkt. 51. Abdullah asserts that many of her claims arose from the fact that she encountered further bias and reprisal after filing complaints. Dkt. 51. Abdullah additionally contends that equitable tolling should apply because her employer deliberately failed to respond to her grievances, citing a complaint she made on October 1, 2014, that received a response from Human Resources on February 2, 2015—about four months after filing. *Id.* She asserts that the employer was required to respond to formal complaints within ninety days and failed to do so.[1] *Id.* She also argues that the court should note that she called EEO, Office of the Special Counsel, and Office of Civil Rights repeatedly to report misconduct and the untimeliness of Human Resources' response. *Id.* (citing Dkt. 51, Ex. B (log showing various calls made from October 2014 through

---

[1] Abdullah titled the October 1, 2014 letter she wrote to the Director of Human Resources as a "Formal Grievance." Dkt. 44-3. However, when Don Keener responded to the letter on February 2, 2015, he advised Abdullah that it was a response to a letter and that if she disagrees with the decision she may file a formal grievance. Dkt. 51-3. He gave instructions on how to file a formal grievance. *See id.* Abdullah apparently followed those instructions, as she received a memorandum in response to her "Formal Grievance" of May 15, 2015, on July 20, 2015. Dkt. 44-7. It appears that she supplemented the May grievance in June, as the memorandum refers to documentation sent on June 27, 2015. *See id.* The policy Abdullah cites states that employees will receive written notification of a decision within ninety calendar days of filing a "*formal grievance.*" *See* Dkt. 51 at 7 (quoting the employee manual). Thus, while clearly the employer needed to act within ninety days of a formal grievance, the record evidence does not provide a specific timeline for responses to complaints that did not follow the formal grievance procedures.

3

August 20, 2015)). Abdullah alleges that her complaints were overlooked by her employer, and she urges the court to not do the same. *Id.*

## II. LEGAL STANDARD

### A. Review of an M&R

A party may file objections to a Magistrate Judge's ruling fourteen days of being served with a copy of a written order. Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)©. The standard of review used by the district court depends on whether the Magistrate Judge ruled on a dispositive or non-dispositive motion. *See* Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)©. District courts must "modify or set aside any part of [an order on a nondispositive motion] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For dispositive motions, district courts "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 73(b)(3).

### B. Motions for Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

The M&R is extremely detailed and addresses all of the issues Abdullah now raises. *See* Dkt. 50. The only issue Abdullah cites that she claims was not addressed by the M&R relates to an alleged report to EEO in October 2014. Abdullah contends that the Magistrate Judge did not consider evidence that she made phones calls to the EEO Office in October 2014 because a clerk erroneously failed to attach the records to Abdullah's surreply. Dkt. 51. The Magistrate Judge noted in the M&R that Abdullah referred to phone records in her surreply that were not actually attached to the surreply. *See* Dkt. 50 at 13. Importantly, however, the Magistrate Judge determined that "[e]ven if [Abdullah] had a phone record that showed she called the EEO Office on that date, this does not raise a fact issue that she attempted to invoke the informal grievance procedure required by the regulation," which "contemplates the initiation of an informal resolution process, not simply a phone call." *Id.* The Magistrate Judge stated that it was "undisputed that [the call or alleged call] did not commence the required informal grievance process." *Id.* The Magistrate Judge thus addressed this issue even absent the evidence. And, as more fully explained below, she addressed it correctly.

Abdullah reiterates the same arguments in her objections that she made to the Magistrate Judge, arguing that (1) she timely contacted an EEO counselor; (2) her report should be considered timely under the continuing violation doctrine; and (3) equitable tolling should apply. The court will address these *in seriatim*.

As the Magistrate Judge noted, Abdullah, as a federal employee, was required to advise an EEO Counselor within forty-five days of any adverse employment action before she could file a claim with the EEOC. Dkt. 50 at 10–11. Abdullah contends that she filed a formal grievance with Human Resources on October 1, 2014, relating to how her performance rating was calculated and

alleging a hostile work environment.[2] Dkt. 51 at 6–7. This was an administrative grievance, not a formal complaint to an EEO Counselor. Abdullah complains that she did not receive a response to her October 1 complaint until February 2, 2015, even though the employee handbook requires a response within ninety days. *Id.* at 7. This timing is inconsequential to the instant analysis, as these dates relate to Abdullah's administrative grievance—not to a formal complaint beginning the EEO process. Abdullah received a partially favorable decision on her administrative grievance on July 20, 2015, which was several months after she resigned. Abdullah made a complaint to her EEO Counselor on July 31, 2015. While she urges the court to consider this complaint timely because it was made within forty-five days of receipt of the decision on her administrative grievance, the Magistrate Judge correctly noted that the receipt of this decision does not qualify as a "adverse employment action." Dkt. 50 at 14–15 (noting that an "adverse employment action" must affect the "terms and conditions of employment" and that the "partially favorable decision" on Abdullah's administrate grievance, received after Abdullah resigned, does not meet this definition). A federal employee who raises a matter in a negotiated grievance procedure may not collaterally attack the decision in an EEO proceeding, as the formal grievance procedure is an election by the employee to pursue the non-EEO process. 29 C.F.R. § 1614.107(a)(14). Since the complaint to the EEO Counselor was made more the forty-five days after Abdullah resigned and the resolution of her formal grievance—the only post-employment act she alleges gave rise to her claims—is not an adverse employment action that may give rise to an EEO action, the complaint to the EEO Counselor was, as the Magistrate Judge found, not timely.

---

[2] The "hostile work environment" alleged in the October 1, 2014 letter relates to the agency "forcing [field representatives] to return to hostile respondents when respondent[s] have expressed with anger not to come back." Dkt. 44-3.

Abdullah contends, however, that the Magistrate Judge erred because she ruled that the continuing violations doctrine did not apply. Under this doctrine, courts may link recent conduct to past conduct if it is part of a continuing practice. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). For this doctrine to apply, the plaintiff must demonstrate that the separate acts are related and not discriminatory discrete acts. *Id.* Here, Abdullah would have to demonstrate that the resolution of her formal administrative grievance in July 2015 is part of a serial violation and not a discrete discriminatory act. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15, 122 S. Ct. 2061 (2002) (finding that the "prior discrete discriminatory acts" were untimely and not actionable but noting that the "very nature" of hostile environment claims "involves repeated conduct"). As the Magistrate Judge noted, the letter resolving Abdullah's formal grievance did not occur during her employment and thus cannot be considered part of a continuing hostile environment. *See* Dkt. 50 at 16–17. Accordingly, the continuing violations doctrine does not apply.

Abdullah also argues that "[e]quitable tolling applies as a matter of law." Dkt. 51 at 9. Equitable tolling should be applied sparingly and only generally only in specific situations, such as if "despite due diligence[, the employee] was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453 (1990). Abdullah contends that the defendant deliberately failed to respond to her grievances and that more than four months went by without any resolution even though the handbook requires action within ninety days. *Id.* She notes that she "called EEO, Office of Special Counsel, and Office of Civil Rights repeatedly to report the misconduct and untimeliness of Human Resources response," placing over 100 phone calls to various departments. *Id.* at 9–10. First, it does appear that Abdullah's employer took more than ninety days to provide its formal response to Abdullah's October 1, 2014 letter regarding issues with

7

her ratings. *See* Dkt. 51-3 (February 2, 2015 letter addressing October 1, 2014 letter). However, she did receive a response, and the employer agreed to make some adjustments to the ratings. *See id.* Thus, there is no showing that her employer deliberately failed to respond. Second, the phone records do not justify equitable tolling. The phone records indicate that Abdullah made numerous calls to the Census Bureau during the time period following her resignation on February 15, 2015. Dkt. 51-2. One of the calls was to "EEO" on April 20, 2015. *See id.* However, this call to "EEO" is more than forty-five days after she resigned on February 15, 2015. Additionally, there is no record or evidence in the record regarding what was discussed during these calls. Equitable tolling is only warranted in the most exceptional cases, and Abdullah has not met her burden to show it should be applied. The Magistrate Judge discussed this extensively in her order on pages 17 through 21, and this court agrees with the Magistrate Judge's assessment.

## IV. CONCLUSION

Abdullah's objections to the M&R (Dkt. 51) are OVERRULED. The M&R (Dkt. 50) is ADOPTED in full. Ross's motion for summary judgment (Dkt. 38) is GRANTED. Abdullah's claims are DISMISSED WITH PREJUDICE. The court will issue a final judgment concurrently with this order.

Signed at Houston, Texas on February 28, 2018.

_____
Gray H. Miller
United States District Judge